# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 10-0297-WS |
| ) | |
| JOHN VINCENT HYLAND, JR., ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on a series of *pro se* filings by defendant, John Vincent Hyland, Jr., including a letter dated March 29, 2011 (doc. 35); a Motion for Reversal of Jury Verdict (doc. 34); and a *Pro Se* Motion for Rehearing (doc. 36).[1]

**I.  Background.**

In an Indictment (doc. 13) filed in open court on December 29, 2010, Hyland was charged with traveling in interstate commerce and knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act, 42 U.S.C. §§ 16901 *et seq.* ("SORNA"), all in violation of 18 U.S.C. § 2250(a).

In January 2011, Hyland's counsel filed a Motion to Dismiss the Indictment (doc. 19), stating as grounds for relief that § 2250(a) was not expressly made retroactive by Congress, that the statute violates the *Ex Post Facto* Clause, that interim regulations concerning retroactivity of SORNA violated the Administrative Procedures Act, that Hyland's due process rights were violated because Michigan officials failed to notify him of his SORNA registration duties, and that Hyland could not have violated § 2250(a) because he was never notified of the federal

---

[1]  Ordinarily, the Court would strike these filings as a matter of course, inasmuch as Hyland is presently represented by appointed counsel and will remain so at least through sentencing, which is set for June 30, 2011. In its discretion, the Court will address the merits of defendant's filings at this time, in the interest of clarifying the record for purposes of direct appeal and collateral review. However, any future *pro se* filings that Hyland may make while represented by counsel may be summarily stricken.

requirements. On February 2, 2011, Judge DuBose entered an Order (doc. 25) denying the Motion to Dismiss for reasons set forth in the Government's response (doc. 22).

On March 28, 2011, Hyland's case proceeded to trial before the undersigned. At trial, the Government presented a stipulation that defendant had previously been convicted of a sex offense that required him to register and update his registration under SORNA.[2] In the light most favorable to the Government,[3] the evidence at trial showed, *inter alia*, the following facts: (i) on or about November 12, 2010, Hyland packed his belongings and moved out of the assisted living facility in Michigan where he had been residing; (ii) during the next two days, Hyland drove to Fairhope, Alabama, transporting boxes of personal effects with him; (iii) upon arriving in Fairhope, Hyland moved his belongings into a vacant house (at 129 Destrehan Road) whose keys he had procured from Doug Brown, a resident at the same Michigan assisted living facility who suffered from dementia, among other mental and physical ailments; (iv) Hyland unpacked his belongings in the Fairhope house, set up a mattress and dresser, and filled the pantry with food; (v) on November 17, 2010, Hyland opened an account at RBC Bank in his own name, listing his home address as 129 Destrehan Road, Fairhope, Alabama; (vi) Hyland met neighbors near the 129 Destrehan Road address at various times, including asking one of them how much he charged for lawn care services; (vii) Brown's daughter Karen Jacobsen and her husband drove to Fairhope from their residence in Tennessee on November 24, 2010, upon learning that Hyland was living in her father's house; (viii) Jacobsen and her husband demanded that Hyland vacate the premises that evening, assisted him in removing his belongings, and paid for a motel room for him; (ix) the following day, Thanksgiving Day, Hyland had dinner at the home of a man he met at a gas station in Fairhope; (x) Fairhope police arrested him at that address; and (xi) at no time between his arrival in Alabama on November 12 and his arrest on November 25 did Hyland

---

[2] This stipulation concerned a conviction of Criminal Sexual Conduct in the First Degree in the State of Michigan in January 1993.

[3] Where, as here, the defendant seeks a judgment of acquittal under Rule 29(c), Fed.R.Crim.P., the Court "must view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Khanani*, 502 F.3d 1281, 1293 (11th Cir. 2007). The recitation of evidence presented at trial is framed in recognition of those principles.

register or update his registration as a sex offender with state or local authorities in Alabama or any other jurisdiction.

At the close of all the evidence, and after being duly instructed in the law, the jury returned a verdict of guilty, finding beyond a reasonable doubt that Hyland had committed the offense of failing to register or update his registration as a sex offender, in violation of 18 U.S.C. § 2250(a).[4]

## II.     Analysis.

Defendant's "Motion for Reversal of Jury Trial" (doc. 34) and accompanying letter (doc. 35) dated March 29, 2011, recite the following grounds for relief: (1) § 2250(a) "is '*ex post facto*' to defendant's 1992 convictions and release," such that jurisdiction is lacking; and (2) a "juror" should have been disqualified for being biased and hostile against him.  Both arguments are devoid of factual or legal merit.  Defendant's Motion for Rehearing (doc. 36) raises several additional meritless objections.

### A.     The "**Ex Post Facto**" *Argument.*

Defendant's *ex post facto* argument is unambiguously foreclosed by binding precedent. The critical point that Hyland overlooks is that § 2250(a) neither criminalizes his 1993 conviction of a sex offense nor increases his punishment for that offense.  That previous conviction, in and of itself, does not violate SORNA.  Rather, the federal criminal offense of which Hyland was indicted and convicted in this case was his conduct of (a) traveling in interstate commerce in November 2010 following the 1993 sex offense conviction, and (b) failing to update his registration in November 2010 when required by SORNA to do so.

As the Supreme Court has explained, "[t]he act of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also, like the act of possession, the very conduct at which Congress took aim."  *Carr v. United States*, --- U.S. ----, 130 S.Ct. 2229, 2240, 176 L.Ed.2d 1152 (2010); *see also United States v. Beasley*, --- F.3d ----, 2011 WL 1107203 (11th Cir. Mar. 28, 2011) ("a defendant violates § 2250(a) only if he becomes subject to SORNA's registration requirements … and *thereafter* travels and *then* fails to register") (citation

---

[4] When the verdict was published in open court, Hyland repeatedly derided the jurors as "fools" until the U.S. Marshal's Service silenced him.  Defendant's expressions of disrespect were not limited to the jury.  On cross-examination, Hyland called the prosecutor a "liar" and a "son of a bitch" and invited him to "drop dead."

and intern punctuation omitted); *United States v. Brown*, 586 F.3d 1342, 1348 (11th Cir. 2009) ("If a convicted sex offender travels in interstate or foreign commerce and knowingly fails to register as required by SORNA, he has violated" § 2250(a)). Hyland's criminal conduct (*i.e.*, his interstate travel and subsequent failure to register) occurred in November 2010, not in 1993 or at any other time predating SORNA's enactment. As such, his *ex post facto* argument is baseless. The indictment and conviction in this case are for Hyland's conduct in November 2010, not for anything he did or failed to do in 1993. Likewise, the sentence that Hyland will receive in the case is not an increased punishment for the sex offense of which he was convicted in Michigan in the early 1990s. Rather, his sentence in this case will be for his criminal acts and omissions in November 2010, when he traveled in interstate commerce and moved his residence from Michigan to Alabama, without updating his SORNA registration in a timely manner, despite his legal obligation to do so. These circumstances do not implicate *ex post facto* principles in any way, shape or form.

To reinforce the point, it bears emphasis that "the following two elements must be present in order for a court to find an *ex post facto* violation: (1) the law must be retrospective, meaning it applies to events occurring before its enactment; and (2) the offender must be disadvantaged by it." *United States v. Abraham*, 386 F.3d 1033, 1037 (11th Cir. 2004); *see also United States v. Cortez*, 757 F.2d 1204, 1207 (11th Cir. 1985) ("Requiring proof of illegal conduct after the enactment of the statute prevents it from running afoul of the *ex post facto* clause."). The Supreme Court has unambiguously held that § 2250 does not criminalize sex offenders' interstate travel activities predating SORNA, such that *ex post facto* principles have no bearing on the statute. *See Carr*, 130 S.Ct. at 2233 (deeming it unnecessary to address *ex post facto* question because "[l]iability under § 2250, we hold, cannot be predicated on pre-SORNA travel").[5] Thus, the law of the land provides that Hyland's offense of conviction, 18 U.S.C.

---

[5] *See also United States v. Guzman*, 591 F.3d 83, 94 (2nd Cir. 2010) ("[B]oth Hall and Guzman were convicted of traveling interstate and failing to register, and in both of their cases the travel and failure to register occurred after SORNA's enactment and the effective date of the regulations indicating that SORNA applies to all sex offenders. … There is, therefore, no *ex post facto* problem with their convictions."); *United States v. Hinckley*, 550 F.3d 926, 938 (10th Cir. 2008) ("Contrary to [defendant]'s arguments, SORNA does not increase punishment for acts committed prior to SORNA's effective date. Therefore, the prosecution of [defendant] under SORNA does not violate the *Ex Post Facto* Clause.").

§ 2250(a), is not retrospective, in that it does not apply to travel occurring before its enactment. In short, his *ex post facto* argument for setting aside the jury's verdict under Rule 29(c), Fed.R.Crim.P., is groundless because § 2250(a) does not apply to events occurring before its enactment.

### B.     The "Biased Juror" Argument.

Hyland's post-trial filings are rife with accusations that a particular "juror" was "extremely hostile" and "biased" against him, but that his lawyer failed to disqualify her. This is a gross distortion of the record. The person to whom defendant refers is Karen Jacobsen, Mr. Brown's daughter who drove down from Tennessee and ejected defendant from her father's home the night before Thanksgiving.[6] Jacobsen was <u>not</u> a juror. She was a witness for the Government. Prosecution witnesses in criminal trials are not subject to "disqualification," as Hyland requests, simply because they evince "hostility" toward a defendant. Were the law otherwise, victims in criminal trials would rarely (if ever) be allowed to testify. Witness bias is an issue for the jury to weigh in its deliberations. This jury was properly instructed in that regard.[7] Moreover, Jacobsen's distaste for what she perceived to be Hyland's predatory conduct towards her ailing father (namely, taking the keys to his house and moving in) was readily discernible from the witness stand. As such, the jury was fully equipped to evaluate the veracity of her testimony through the prism of any personal interest or bias that she may have.[8]

Simply put, witness Jacobsen was not subject to disqualification for purportedly being "hostile" towards defendant. The jury was well-positioned to evaluate any bias she may have harbored toward Hyland in ascertaining how much (if any) weight to place on her testimony. As

---

[6]     The "juror" in question is obviously Jacobsen because defendant describes her as "daughter of Douglas Brown, the owner of home at 129 Destrahan, Fairhope." (Doc. 34, ¶ 4.)

[7]     In particular, the Court's charge to the jury included the following passage: "In deciding whether you believe any witness I suggest that you ask yourself a few questions: … Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case?"

[8]     If Jacobsen's feelings toward Hyland were not sufficiently developed during her testimony, defendant himself underscored the point by testifying that she had screamed and shouted at him that she wanted him out of the house immediately.

such, Hyland's attempts to derive Rule 29 or other post-trial relief from allegations that this witness dislikes him are unfounded.

        *C.*        *Other Arguments from* **Pro Se** *Motion for Rehearing.*

Defendant's *Pro Se* Motion for Rehearing is difficult to evaluate because it appears to be a jumbled compendium of handwritten correspondence to various persons (including several letters to his lawyer) interspersed with fragmentary lists of undeveloped arguments and catchphrases. It is unclear what specific issues Hyland wishes to present as grounds for this apparent Rule 33 Motion for New Trial. Nonetheless, it appears that defendant seeks relief for the following reasons (in addition to rehashing *ex post facto* arguments previously considered and rejected): (1) federal and state officials violated his rights by failing to post signs on Interstate 65 in Alabama alerting motorists that sex offenders must register; (2) Alabama law enforcement officials committed an "act of kidnapping" when they arrested him; (3) the arresting officers failed to provide a *Miranda* warning to defendant; (4) Alabama's sex offender registration laws are unconstitutional for various reasons; and (5) federal jurisdiction did not attach.

With regard to the notice issue, defendant identifies no authority holding that formal government notice of a defendant's registration obligations is a prerequisite to, or an element of, a § 2250(a) prosecution. More fundamentally, Hyland's suggestion that he received inadequate notice of his SORNA registration obligations is belied by the fact that he actually did register as a sex offender in Michigan. As such, he was obviously aware of his duty to register under that state's law. That is sufficient notice. *See Brown*, 586 F.3d at 1351 ("we join our sister circuits in concluding that notice of a duty to register under state law is sufficient to satisfy the Due Process Clause.") (citations and internal quotation marks omitted). Besides, Hyland was unquestionably on inquiry notice of his duty to register based on (i) his Michigan conviction as a sex offender; (ii) his compliance with Michigan registration requirements, thereby demonstrating understanding of his duty to register; (iii) the enactment in 1994 of a federal statute setting national standards for sex offender registration and notification; and (iv) the pre-existence of sex offender registration laws in every state which have garnered national media attention. *See Brown*, 586 F.3d at 1351 (noting sufficiency of such circumstances "to prompt [defendant] to have inquired upon his duty to register," thereby satisfying due process notice requirements). In short, Hyland knew that he was a convicted sex offender. He knew that he was subject to

registration requirements in Michigan. He knew or should have known that every state in the country has sex offender registration laws, and that there are federal registration requirements as well. At the very least, Hyland was on inquiry notice that a cross-country move from Michigan to Alabama would trigger a corresponding duty to update his registration in Michigan, or to register in his new state of residence. Hyland disregarded these matters at his peril.

Hyland's framing of his arrest as a "kidnapping" is to no avail. Even if he is correct that his arrest were unlawful in some manner, that fact would not necessarily implicate the validity of his conviction. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("illegal arrest or detention does not void a subsequent conviction"); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (recognizing that "an illegal search or arrest may be followed by a valid conviction"). As the Supreme Court observed more than a half century ago, "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Defendant has identified nothing in the circumstances of his arrest that would undermine the validity of his conviction here.

Similarly, Hyland's insistence that he did not receive *Miranda* warnings contemporaneously with his arrest is much ado about nothing. *Miranda* violations lead to exclusion of statements wrongfully obtained thereby. *See, e.g., United States v. Arbolaez*, 450 F.3d 1283, 1292 (11th Cir. 2006) (noting that *Miranda* precludes prosecutors from using statements stemming from custodial interrogation of defendant without procedural safeguards effective to protect defendant's privilege against self-incrimination); *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999) ("failing to follow *Miranda* procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right"). The Government did not attempt to introduce into evidence any post-arrest statements by Hyland; therefore, the arresting officers' compliance or non-compliance with *Miranda* principles has no bearing on Hyland's trial or the validity of his conviction.

As for alleged constitutional defects in Alabama's sex offender registration scheme, Hyland misses the point. He was not prosecuted for or convicted in this case of violating Alabama's sex offender registration statute codified at Alabama Code §§ 13A-11-200 *et seq.* Rather, he was prosecuted and convicted of violating the federal registration requirements prescribed pursuant to SORNA. As the Eleventh Circuit explained in analogous circumstances,

defendant's "argument fails to appreciate the distinction between a jurisdiction's duty to implement SORNA and a sex offender's duty to register." *Brown*, 586 F.3d at 1348. Whether Alabama's registration scheme is constitutional or not is beside the point, inasmuch as Hyland was charged and convicted in this case of violating <u>federal</u> registration requirements, not <u>Alabama</u> registration requirements.[9] In particular, SORNA provides that "[a] sex offender shall, not later than 3 business days after each change of … residence, … appear in person in at least 1 jurisdiction involved … and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 42 U.S.C. § 16913(c). This is federal law, not state law. So what Hyland was indicted and convicted of in this case was being a person subject to SORNA requirements who subsequently (a) traveled in interstate commerce, and (b) failed to update his registration as required by SORNA (not state law). Whether Alabama law properly reaches Hyland's conduct (as he now contests) is of no consequence.

The foregoing discussion is likewise fatal to Hyland's contention that there is no federal jurisdiction. Hyland was charged with, and was convicted of, violating a federal criminal statute, to-wit: 18 U.S.C. § 2250(a). Any suggestion that federal jurisdiction to enforce this federal criminal statute against him is somehow lacking is frivolous. *See, e.g., Alikhani v. United States*, 200 F.3d 732, 734-35 (11th Cir. 2000) (explaining that Congress "has provided the district courts with jurisdiction … of all offenses against the laws of the United States" and that where indictment charges defendant with violating laws of the United States, the district court is empowered to enter judgment on the merits of same); 18 U.S.C. § 3231. There is obviously federal jurisdiction over this case.

---

[9] The particulars of the Alabama registration scheme matter for purposes of Hyland's conviction under § 2250(a) only insofar as "Alabama maintained a sex offender registry during the relevant time period which required sex offenders to register and provide updated information upon changing residences" and that Hyland "could have registered as a sex offender through Alabama's sex offender program" had he chosen to do so. *Brown*, 586 F.3d at 1349. Hyland does not and cannot deny that Alabama had a sex offender registration program in effect and that he could have updated his registration via same had he wished.

**III.    Conclusion.**

For all of the foregoing reasons' defendant's Motion for Reversal of Jury Trial (doc. 34) and his Motion for Rehearing (doc. 36) are **denied**.

DONE and ORDERED this 12th day of April, 2011.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE